**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

NOLVIN FERNANDO FAJARDO GOMEZ,

*Petitioner*,

v.

MARKWAYNE MULLIN, *et al.*

*Respondents*.

Civil Action No. 26-cv-11868

**MEMORANDUM ORDER**

September 14, 2026

**THIS MATTER** comes before the Court on the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, of Petitioner Nolvin Fernando Fajardo Gomez ("Petitioner"), an eighteen-year-old native and citizen of Honduras, challenging his present immigration detention. (ECF No. 1.) Having reviewed the Petition and the materials submitted in support thereof, the Court concludes that immediate relief is warranted on the record presently before it.

Petitioner alleges that he entered the United States in December 2023, at approximately fifteen years of age. (*Id.* ¶ 10.) Following his arrival, he was placed in the custody of the Department of Health and Human Services, Office of Refugee Resettlement, and was subsequently placed in the custody of New York State and the New York City Administration for Children's Services after being determined to have been abused and abandoned by his parents. (*Id.* ¶ 9.) Petitioner remains a high-school student in New York City and resides in foster care. (*Id.*)

Petitioner was served with a Notice to Appear in 2024. (*Id.* ¶ 10.) His removal proceedings were terminated by the New York Immigration Court on October 28, 2025. (*Id.*) The Petition alleges that Petitioner has no criminal history and is not subject to a final order of removal. (*Id.*

¶¶ 13–14.)

On September 11, 2026, Petitioner appeared at the Newark Asylum Office for a scheduled interview concerning his application for asylum. (*Id.* ¶¶ 5, 11.) During that appointment, United States Immigration and Customs Enforcement ("ICE") officers took him into custody. (*Id.*) The Petition alleges that Petitioner was thereafter detained at an unknown ICE facility in New Jersey and that he faced imminent transfer outside the State.[1] (*Id.* ¶ 1.) On September 11, 2026, the Court entered an Order enjoining Respondents from transferring Petitioner outside New Jersey pending further Order of the Court. (*Id.* ¶ 2.)

The Court considers whether the facts alleged and materials submitted with the Petition establish a lawful basis for Petitioner's present detention.[2]

They do not.

## I. Petitioner's Present Detention Is Not Authorized by 8 U.S.C. § 1225(b)(2)(A)

Section 1225(b)(2)(A) requires mandatory detention of an "alien seeking admission" who is determined not to be clearly and beyond a doubt entitled to be admitted. 8 U.S.C. § 1225(b)(2)(A).

---

[1] The Court has jurisdiction over this Petition notwithstanding that the identity and location of Petitioner's immediate custodian are presently unknown. The Petition alleges that Petitioner was detained by ICE in New Jersey immediately after appearing at the Newark Asylum Office, and the record presently before the Court does not identify the facility to which he has been taken. The immediate-custodian rule does not foreclose habeas jurisdiction where a petitioner's current custodian or whereabouts are unknown. *See Khalil v. President, United States*, 164 F.4th 259, 268 (3d Cir. 2026); *Sanchez Reyes v. Soto*, No. 26-2499, slip op. at 3–4 (D.N.J. Apr. 8, 2026) (applying the unknown-custodian exception where the petitioner's whereabouts were unknown and the Government controlled her movements); *Carrera Cabrera v. Joyce*, No. 26-8252, slip op. at 1–2 (D.N.J. July 23, 2026) (finding habeas jurisdiction where, at filing, information available to counsel indicated that petitioner was detained in New Jersey, even though the immediate custodian was not identified). The Court therefore proceeds against the Respondents named in the Petition, who include the federal officials responsible for Petitioner's immigration detention.

[2] The Court notes that Respondents have not yet been directed to respond to the Petition. The Court therefore makes no finding concerning Respondents' position.

The Third Circuit recently addressed the scope of that provision in *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026). The Court held that § 1225(b)(2)(A) contains distinct requirements and that being an "applicant for admission" does not, by itself, establish that an individual is "seeking admission." Rather, the latter requirement contemplates a present or ongoing effort to obtain admission to the United States. *Id.* at *3–5.

The Court further explained that § 1225 concerns persons seeking admission, whereas § 1226 generally governs the detention of noncitizens already present in the United States during removal proceedings. *Id.* at *5–7.

The allegations here place Petitioner outside § 1225(b)(2)(A)'s mandatory-detention provision. Petitioner entered the United States in 2023 and has remained here since. (ECF No. 1 ¶ 10.) He was not apprehended while attempting to enter the country or at a port of entry. Rather, he was detained inside the United States, at the Newark Asylum Office, while appearing for a scheduled asylum interview. (*Id.* ¶ 5, 11.)

Petitioner's appearance at an asylum interview does not constitute an effort to obtain admission to the United States. He was already present in this country and was seeking protection from removal. Nothing in the record presently before the Court indicates that Petitioner was seeking admission when he was detained.[3]

Accordingly, even assuming that Petitioner could be characterized as an "applicant for admission" under 8 U.S.C. § 1225(a)(1), the separate requirement that he be "seeking admission" is not satisfied. Under *Buele Morocho*, § 1225(b)(2)(A) therefore does not authorize his mandatory

[3] *See Buele Morocho*, 2026 WL 2546223, at *4–5 (explaining that "applicant for admission" and "seeking admission" are distinct statutory requirements and that the latter requires a present or ongoing affirmative act to obtain admission).

detention.

## II. Record Does Not Establish Another Basis for Petitioner's Continued Detention

The Court recognizes that other provisions of the immigration laws may authorize detention in circumstances not covered by § 1225(b)(2)(A). Section 1226(a), for example, provides a separate framework for the arrest and detention of certain noncitizens pending a decision concerning removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 289, 303 (2018) (explaining that § 1225(b) authorizes detention of certain noncitizens seeking admission, while § 1226(a) provides the "default rule" for non-citizens already present in the United States, permitting their arrest and detention pending a decision on removal).

But the Court need not—and on the present record cannot—determine whether some other detention authority might become applicable in the future. The question before the Court is whether Petitioner's **present detention** is lawful.

The record presently before the Court does not identify a final order of removal or a criminal basis for mandatory detention. (*See* ECF No. 1.) Nor does the record suggest that Petitioner was taken into custody pursuant to § 1226(a).[4] (*See id.*) Nor does the record establish any other statutory authority for Petitioner's continued physical confinement. (*See id.*) To the contrary, Petitioner's prior removal proceedings were terminated by the Immigration Court on October 28, 2025, and the record contains no indication that those proceedings remain pending or that a final order of removal has since been entered. (*Id.* ¶ 15; ECF No. 1-1.) Thus, on the present record, there is no identified removal proceeding or other statutory basis that authorizes

[4] Nothing presently before the Court indicates that Petitioner was served with a new charging document, placed in a new removal proceeding, subjected to a § 1226(a) custody determination, or afforded an opportunity for release on bond. The Court therefore has no basis on the present record to conclude that Petitioner's detention was effected pursuant to § 1226(a).

Petitioner's continued detention.

The Court will not supply an alternative statutory basis for the detention or convert Petitioner's present custody into detention under a different statutory regime carrying different procedural protections. *See Guevara Argueta v. Soto*, No. 26-2817, slip op. at 3–4 (D.N.J. Sept. 9, 2026) (declining to convert detention under an inapplicable § 1225(b)(2) theory into detention under § 1226(a) and ordering immediate release).

This is a limited ruling. The Court holds only that the detention presently before it cannot be sustained on the current record. The Court need not determine whether Petitioner could ever be detained under § 1226(a). It need only determine whether the present record establishes that he is being detained pursuant to that provision. It does not.

**III. The Circumstances of Petitioner's Detention Warrant Immediate Relief**

The Court is mindful that the equities do not themselves establish statutory authority for detention. They are nevertheless relevant to the nature and immediacy of the liberty interest at stake.

Petitioner is eighteen years old. (*Id.* ¶ 9.) He entered the United States as a fifteen-year-old and was subsequently placed in federal and state child-welfare custody following allegations of abuse and abandonment by his parents. (*Id.*) He remains a high-school student and resides in foster care. (*Id.*) His prior removal proceedings were terminated in October 2025. (*Id.* ¶ 10.) The Petition alleges that he has no criminal history and no final order of removal. (*Id.* ¶¶ 13–14.)

Most significantly, Petitioner was detained while appearing voluntarily at a scheduled asylum interview. (*Id.* ¶¶ 5, 11.) Thus, on the present record, he was not apprehended while attempting to evade immigration authorities or while entering the United States. (*See* ECF No. 1.) Petitioner was taken into custody while appearing before the Government to pursue his claim for

protection.

Petitioner's detention implicates the core liberty interest protected by the Fifth Amendment. "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The fact that immigration detention is civil and nonpunitive does not place physical restraint beyond constitutional scrutiny. *Id.* at 690–91. Here, Petitioner is eighteen years old and was detained while voluntarily appearing for a scheduled asylum interview. (*Id.* ¶¶ 5, 9, 11.) Yet the record presently before the Court identifies no final order of removal, no criminal basis for mandatory detention, no § 1226(a) custody determination, and no other statutory authority for his continued confinement. (*See* ECF No. 1.) Where the Government has physically restrained a person and the record does not establish the statutory authority for doing so, the deprivation of liberty cannot simply be presumed lawful.

**IV. Relief**

Because § 1225(b)(2)(A) does not authorize Petitioner's detention and no alternative statutory basis for his present confinement has been established, habeas relief is warranted.

Accordingly, it is, on this 14th day of September 2026,

**ORDERED** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) is **GRANTED**; and it is further

**ORDERED** that Respondents shall **RELEASE** Petitioner within twenty-four (24) hours of this Order, under the same conditions that existed prior to his detention; and it is further

**ORDERED** that Respondents shall file a letter with the Court within forty-eight (48) hours of Petitioner's release certifying that Petitioner has been released; and it is further

**ORDERED** that nothing in this Order shall be construed to preclude Respondents from

pursuing Petitioner's immigration proceedings or taking any further action authorized by law, including proceedings concerning Petitioner's asylum application.

*/s/ Karen M. Williams*
**Hon. Karen M. Williams,**
**United States District Judge**